VOURDON FRICKE, ASSIGNEE, RESPONDENT, v. W. E. FUETTERER BATTERY AND SUPPLIES COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed November 2, 1926.

**1.—Set-Offs and Counterclaims—Accounts—Action by Assignee—Counterclaim May Be Pleaded Only as Defense.** In an action upon an account by the assignee, defendant may set up as a defense against recovery by the assignee a counterclaim for unliquidated damages existing in favor of the defendant against the assignor at the time the chose in action was assigned. and which could have been properly pleaded against the assignor if such assignor had himself brought suit upon the chose in action, in view of sections 1232, 1233, 1292, 1293, 2161, Revised Statutes 1919, but the defendant is not entitled to plead his counterclaim as such against the assignee and may plead it only as a defense to defeat recovery of a judgment by the assignee or to reduce the amount of his recovery.

**2.—Same—Statutory.** Counterclaims and set-offs are purely statutory and were unknown to the common law.

**3.—Same—Statutes—Construction.** The provisions of sections 1232 and 1233 relating to pleadings and sections 1292 anad 1293 relating to set-offs, Revised Statutes 1919, are closely related and must be construed together.

**4.—Same—Same—Same—Remedial—Construed Liberally.** Sections 1232, 1233, 1292 and 1293 relating to counterclaims and set-offs are remedial in their character and should be liberally construed as such.

**5.—Same—Counterclaim—Defined.** A counterclaim is a counter demand existing in favor of defendant against the plaintiff and the counterclaim authorized by the statute is an enlargement of the scope of set-off and recoupment, and is broader in meaning than set-off or recoupment, and includes them both.

**6.—Same—Recoupment—Common Law.** Recoupment was recognized at common law and is defined to be the keeping back and stopping something which is due, and could be invoked where the defendant sustained damages by reason of the plaintiff's nonperformance of his part of the contract sued on, in which case the damages to which the defendant was entitled could be abated or defalked from the plaintiff's claim.

**7.—Same—Assignee of Chose in Action—Defenses Available.** Section 1293, Revised Statutes 1919, allowing the defendant in a suit by the assignee of a chose in action to interpose "every just set-off or other defense which existed in his favor at the time of being notified of such assignment" includes every counter demand, whether properly denominated as a counterclaim or set-off, which the defendant might have set up as a defense in a suit by the assignor to defeat or reduce his recovery.

**8.—Same—Accounts—Fraudulent Assignment—Action By Assignee—Defendant's Right to Set up Every Legal Defense Not Affected.** The fraudulent assignment of an account to an employee of attorneys, which attorneys also represented the defendant as its attorney and knew of the defendant's plan or purpose to interpose a counterclaim against the claim of plaintiff's assignor, cannot in any wise affect the right of defendant to set up any and every legal defense to which he was before entitled.

**9.—Bills of Exception—Affirmative Defense Struck Out—No Term Bill—Ruling Reviewable Where Properly Preserved in General Bill.** A ruling of the trial court in striking out affirmative defense set up in defendant's answer held reviewable though not preserved in a term bill of exceptions where the. motion to strike was filed and ruled upon at the same term at which the trial was had and the motion for a new trial was filed at the same term and within four days after the verdict was rendered in the cause, and the motion for a new trial was thereupon continued to a subsequent term, when it was overruled, and the motion to strike and the ruling of the court thereupon was preserved in the general bill of exceptions duly allowed and filed in the cause.

---

Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 273, n. 48; Recoupment, Set-off and Counterclaim, 34Cyc, p. 623, n. 1; p. 624, n. 4; p. 626, n. 18; p. 629, n. 32, 34; p. 630, n. 35; p. 744, n. 57, 58; p. 752, n. 21; p. 753, n. 30.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Granville Hogan, Judge.

REVERSED AND REMANDED.

*Anderson, Gilbert & Wolfort* for appellant.

(1) The assignee takes no greater title than the assignor. Section 2161, R. S. 1919; Rice v. McFarland, 34 Mo. App. 411. (2) The parts of the answer stricken out admit that the only goods purchased by defendant were under its contract, and that the Cincinnati Storage Battery Company breached its contract. (3) The parts of the answer stricken out admit that the plaintiff's attorneys fraudulently procured the assignment of the claim to endeavor to preclude the defendant from interposing a counterclaim. (4) Where goods

are purchased under contract the other provisions of the contract are part of the consideration of the purchase and a failure to perform them is a defense as failure of consideration. Langdon v. Markle, 48 Mo. 360; Roman v. Trading Co., 87 Mo. 'App. 186.

*Frank Lee* and *John V. Lee* for respondent.

(1) Absent exceptions written out, signed, approved and filed at the time, concerning the pleadings, a motion for a new trial cannot galvanize exceptions into life. And claimed error, thus preserved, must be again included in the motion for new trial. Hurt v. King, 24 Mo. App. 597; Kern v. Schmedler, 92 Mo. 516; Barber v. Ulman, 137 Mo. 564; Rigdon v. Ferguson, 172 Mo. 52; County v. Bank, 175 Mo. 539; Blanchard v. Dorman, 236 Mo. 436; Moran v. Stewart, 246 Mo. 472; Interstate Railway Co. v. Railroad, 251 Mo. 718; State ex rel. v. Gill & Sons, 220 S. W. 978; Leahy v. Mercantile Trust Co., 247 S. W. 401; Bank v. McMenamy, 35 Mo. App. 203. (2) Only such exceptions as fall within the purview of the motion for a new trial are continued with that motion; exceptions to action on the pleadings must be written out, signed and filed during the term. Brewing Co. v. Ehlhardt, 139 Mo. App. 135; Leahy v. Merc. Trust Co., supra; Bank v. McMenamy, supra. (3) Besides, the action of the court below was not error. Equities of third parties who had dealt directly with the original creditor cannot affect the assignee. Bauerdorf v. Wall Paper Co., 203 S. W. 221; Bartlett v. Eddy, 49 Mo. App. 44. (4) A demand for damages is not a debt. The consideration paid is not a proper subject of inquiry. Caldwell v. Ryan, 210 Mo. 17; Bank v. Kirkham, 156 Mo. App. 309; Young v. Hudson, 99 Mo. 102; Halvorson v. Trust Co., 222 S. W. 897. (5) There is no merit to this appeal, which is vexatious within the statute, and the penalty should be assessed. Sec. 1515, R. S. 1919; Enright v. Hale Petroleum Co. (Mo. Sup.), 250 S. W. 908.

SUTTON, C.—This is an action upon an account amounting to $1,223.97 for batteries sold and delivered to defendant by the Cincinnati Storage Battery Company.

The petition alleges that the defendant became indebted to the Cincinnati Storage Battery Company, a corporation, upon an account for storage batteries sold and delivered to defendant at its special instance and request in the sum of $1,223.97, and that the account was afterwards for value sold and assigned to the plaintiff.

The answer denies generally the allegations of the petition and sets up by way of affirmative defense facts constituting a counterclaim against the Cincinnati Storage Battery Company amounting to more

220 Mo. App.—40.

than the account sued on. On motion of the plaintiff, this affirmative defense was stricken out by the court below.

The trial resulted in a judgment for plaintiff for the full amount of the account sued on, and from this judgment the defendant has appealed.

The act of the court in striking out the affirmative defense set up in the defendant's answer is assigned as error here. The defense is predicated upon the breach of a contract entered into between the Cincinnati Storage Battery Company and the defendant, under and pursuant to which contract the batteries sued for were sold to the defendant. No question being made as to the validity or construction of the contract pleaded, it will not be necessary to set it out in detail.

The answer "for further defense in bar, counterclaim, and set-off to plaintiff's alleged cause of action" alleges, in substance: That the Cincinnati Storage Battery Company, an Ohio corporation, made and entered into a written contract with defendant whereby said Cincinnati Storage Battery Company agreed to sell to defendant, upon receiving written orders therefor, any of its standard automobile starting and lighting types of batteries and parts thereof which the defendant might require at prices designated in the contract, and to protect the defendant within certain described territory in the states of Missouri and Illinois to the extent that there should be no other dealer or service station appointed or sold within that territory, and the defendant agreed to purchase and actively push the sale of such automobile starting and lighting types of batteries and parts thereof and establish service stations throughout said territory; that thereafter, pursuant to said contract, defendant purchased articles and faithfully performed all its parts of said contract; that said Cincinnati Storage Battery Company failed and neglected to perform its part of said contract and breached said contract; that the said Cincinnati Storage Battery Company violated its part of said contract by failing to protect the defendant in its territory by establishing other dealers and service stations and selling within said territory and in refusing to sell its batteries and parts to defendant as required by said contract, to the defendant's damage in a sum in excess of plaintiff's demand; that said claim of defendant arose prior to the assignment of said account to the plaintiff; that the batteries purchased by defendant from the Cincinnati Storage Battery Company were purchased under and pursuant to said contract; that the said Cincinnati Storage Battery Company employed Gatewood and Associates as its attorneys to represent it in collecting the amount claimed to be due from defendant on said account; that said Gatewood and Associates represented defendant as attorneys in collection matters; that thereby said Cincinnati Storage Battery Company

fraudulently learned the plan of defendant to interpose a counter-
claim to said claim and learned of the evidence supporting said coun-
terclaim and the details thereof, and that having learned this, the
said Cincinnati Storage Battery Company pretended to execute to
the plaintiff, who is an employee of said Gatewood and Associates, an
assignment of its claim against defendant.

In support of the court's action in striking out the affirmative de-
fense set up in the answer, plaintiff urges that the facts pleaded
show a claim against the Cincinnati Storage Battery Company for
unliquidated damages, constituting a counterclaim, and not a set-off,
and may therefore not properly be set up as a defense to the plain-
tiff's action on the assigned account. The question is thus raised
as to whether or not a defendant in a suit by the assignee of an ordi-
nary chose in action may set up as a defense against recovery by the
assignee a counterclaim for unliquidated damages existing in favor
of the defendant against the assignor at the time the chose in action
was assigned, and which could have been properly pleaded against
the assignor if such assignor had himself brought suit upon the
chose in action. That the defendant may set up as a defense in a
suit on an assigned chose in action any set-off which existed in his
favor against the assignor at the time of the assignment is conceded.
Counterclaims and set-offs are purely statutory. They were un-
known to the common law. The decision of the questions here involved
necessarily depends, therefore, upon the proper construction of our
statutes relating to counterclaims and set-offs.

The provisions of sections 1232, 1233, 1292, and 1293, Revised
Statutes 1919, are peculiarly pertinent, as follows:

"Sec. 1232. The answer of the defendant shall contain: First,
a general or specific denial of each material allegation of the petition
controverted by the defendant, or any knowledge or information
thereof sufficient to form a belief: *Provided*, that it shall be compe-
tent for the defendant to unite a general and specific denial in the
same answer; second, a statement of any new matter constituting a
defense or counterclaim, in ordinary and concise language, without
repetition."

"Sec. 1233. The counterclaim mentioned in the last section must
be one existing in favor of a defendant and against a plaintiff, be-
tween whom a several judgment might be had in the action, and
arising out of one of the following causes of action: First, a cause
of action arising out of the contract or transaction set forth in the
petition as the foundation of the plaintiff's claim, or connected with
the subject of the action; second, in an action arising on contract,
any other cause of action arising also on contract, and existing at
the commencement of the action. The defendant may set forth by
answer as many defenses and counterclaims as he may have, whether

they be such as have been heretofore denominated legal or equitable, or both. They must each be separately stated, in such manner that they may be intelligibly distinguished, and refer to the cause of action which they are intended to answer.''

''Sec. 1292. If any two or more persons are mutually indebted in any manner whatsoever, and one of them commence an action against the other, one debt may be set off against the other, although such debts are of a different nature.''

''Sec. 1293. In actions on assigned accounts and non-negotiable instruments, the defendant shall be allowed every just set-off or other defense which existed in his favor at the time of his being notified of such assignment.''

These provisions appear in the code of civil procedure, being chapter 12, Revised Statutes 1919. Sections 1232 and 1233 appear in article 5, relating to pleadings. Sections 1292 and 1293 appear in article 7, relating to set-offs.

The provisions of these sections are closely related, and must be construed together. They are remedial in their character, and ought to be liberally construed as such. It is urged that, under the provisions of section 1292, only liquidated demands are recognized as set-offs and that only such demands are comprehended within the provisions of section 1293, allowing the defendant in a suit by the assignee of an ordinary chose in action to set up ''every just set-off or other defense'' existing in favor of the defendant at the time of his being notified of the assignment, and that these provisions do not comprehend counterclaims as defined in section 1233. There is no question under the authorities that the demands authorized to be used as set-offs under the provisions of section 1292 are liquidated demands, but it does not necessarily follow that only such demands are comprehended within the terms, ''every just set-off or other defense,'' as employed in section 1293. There is a difference between counterclaims and set-offs as defined by the statute, but there is a very close resemblance between them. In fact, it has become a common practice to use the terms interchangeably. A counterclaim is a counter-demand existing in favor of defendant against the plaintiff. So is a set-off. If the defendant's counterclaim be equal to or greater than the plaintiff's demand, the plaintiff's demand is extinguished by the counterclaim, and the plaintiff cannot recover any judgment on his demand; if the counterclaim exceed the plaintiff's demand, the defendant may take judgment for the excess, that is to say, he may take judgment for the portion of his counterclaim not used or consumed in extinguishing the plaintiff's demand; if the counterclaim be less than the plaintiff's demand, it reduces his demand and defeats recovery thereon *pro tanto;* and if the plaintiff dismiss his suit, the defendant may proceed to judgment upon his counterclaim.

The same is true in case of a set-off. A counterclaim, as authorized and defined in section 1233, is a set-off in the sense that it is set off against the plaintiff's demand. So, too, a set-off, as authorized and defined by section 1292, is a counterclaim in the sense that it is a counter-demand against the plaintiff. Each is a set-off in the sense that it is set off against the plaintiff's demand, and each is a counter-claim in the sense that it is a counter-demand against the plaintiff. Of course, in either case, the counter-demand, though it exceed the plaintiff's demand, may be used simply as a set-off, that is, merely as a means of extinguishing the plaintiff's demand.

The defense of recoupment was recognized at common law. It is defined to be the keeping back and stopping something which is due. At common law it could be invoked where the defendant sustained damages by reason of the plaintiff's nonperformance of his part of the contract sued on, in which case the damages to which the defendant was entitled could be abated or defalked from the plaintiff's claim. It is said that this defense is distinguished from set-off in these particulars: (1) It arises out of matters connected with the transaction or contract on which the plaintiff's cause of action is founded; (2) it matters not whether it be a liquidated or unliquidated demand; (3) if it exceed the plaintiff's demand, defendant cannot in that action recover the balance due him; (4) it is not dependent on any statutory regulation, but is controlled by the principles of the common law. The counterclaim authorized by the statute is an enlargement of the scope of set-off and recoupment. It is broader in meaning than set-off or recoupment and includes them both. The defense of recoupment as recognized at common law appears to be set up by the answer in this case, or is at least within its allegations.

We think the comprehensive language of section 1293, allowing the defendant in a suit by the assignee of a chose in action to interpose "every just set-off or other defense which existed in his favor at the time of his being notified of such assignment," includes every counter-demand, whether properly denominated as a counterclaim or as a set-off, which the defendant might have set up as a defense in a suit by the assignor. to defeat or reduce his recovery. Certainly it is comprehensive enough to include the defense of recoupment as recognized at common law. This view is in accord with the authorities in this State and elsewhere. [Roman v. Boston Trading Co., 87 Mo. App. 186; Langdon v. Markle, 48 Mo. 357; Rice v. McFarland, 34 Mo. App. 404; Herman v. McNamara, 77 Mo. App. 1; Nelson v. Johnson, 25 Mo. 430; Grand Lodge of Masons v. Knox, 20 Mo. 433; House v. Marshall, 18 Mo. 368; Krausse v. Greenfield, 61 Ore. 502; Hayes v. Slidell Liquor Co., 99 Miss. 583; Freeman v. Seitz, 126 Cal. 291; Hays v. M'Lain, 66 Ark. 400; Marconi Wireless Tel. Co. v. Signaling Co.,

206 Fed. 295; Windecker v. Mutual Life Ins. Co., 43 N. Y. Supp. 358; Smith v. French, 141 N. C. 1; Weaver v. Roberson, 134 Ga. 149; American Bridge Co. v. City of Boston, 202 Mass. 374; United Transportation & Lighterage Co. v. New York & Baltimore Transportation Line, 180 Fed. 902. ]

This view also appears to be in accord with the manifest purpose and spirit of the statute. The prime object of sections 1232, 1233, and 1292, allowing counterclaims and set-offs existing in favor of the defendant and against the plaintiff to be interposed, is to obviate the injustice of permitting the plaintiff to take judgment for the full amount of his demand against the defendant when, upon a proper adjustment of the demands existing between the plaintiff and defendant, the defendant owes the plaintiff nothing, or not as much as the plaintiff claims, or maybe the plaintiff is indebted to the defendant instead. In harmony with this, it appears to be the purpose of section 1293 to make available to the defendant, in a suit by the assignee of a chose in action, every defense existing in his favor at the time of his being notified of the assignment which would have been available to him in an action by the assignor, to the end that the assignee be not allowed to take judgment against defendant on the chose when the assignor himself would not have been entitled to judgment thereon. Section 2161, providing that no assignee of a demand shall obtain greater title thereto or interest therein than the person had from whom it was acquired, points in the same direction. In early times this section and section 1293 were close companions as they then appeared in the statute. It is conceded, as it must be, that an independent liquidated demand, existing in favor of the defendant at the time of his being notified of the assignment of the chose, may be set off as a defense against the chose in a suit thereon by the assignee thereof. No sound reason appears, and none has been suggested, why a counter-demand arising out of or founded upon an independent transaction or contract, may be set off against an assigned demand in an action by the assignee thereon, while the right to set up a counter-demand arising out of and directly connected with the transaction or contract out of which the assigned demand arises and upon which the suit is founded, is denied. The fact that the one counter-demand is liquidated and the other unliquidated affords no sound reason for allowing the one and denying the other. There is no reason that may be urged as a ground for disallowing an unliquidated counter-demand as a defense against an assigned demand in an action by the assignee thereon that may not be urged with equal force as a ground for disallowing it in an action by the assignor.

Emery v. St. Louis, Keokuk & Northwestern Ry. Co., 77 Mo. 339, Cutler v. Cook, 77 Mo. 388, and Barnes v. McMullins, 78 Mo. 260, appear to be relied on in support of the plaintiff's view.

In the Emery case a question of jurisdiction was involved. Section 1923 was not under review and was in no way involved in the decision. The Cutler and Barnes cases were actions on negotiable instruments, transferred after maturity, and the cases were ruled on the law merchant, and it was expressly held that the provisions of section 1293, which was then section 3868, had no application, and that neither counterclaims nor set-offs, which arose out of independent transactions, were allowed in actions on such instruments, though transferred after maturity.

Of course, the defendant is not entitled to plead his counterclaim as such against the assignee. He may plead it only as a defense to defeat recovery of a judgment by the assignee or to reduce the amount of his recovery, and the defendant so pleads it in this case.

Aside from this, there is another phase of defendant's answer to be reckoned with in this case. The answer, allowing the defendant the benefit of the facts alleged and the inferences that may be reasonably drawn therefrom, charges that the Cincinnati Storage Battery Company employed Gatewood and Associates as its attorneys to represent it in collecting the amount sued for in the petition, which it claimed to be due from the defendant; that Gatewood and Associates also represented the defendant as its attorneys in collection matters at the same time; that by reason of their relation to the defendant as its attorneys, Gatewood and Associates learned of the defendant's plan or purpose to interpose a counterclaim to the claim of the Cincinnati Storage Battery Company, and learned the details of defendant's counterclaim, and the evidence supporting it, and that Gatewood and Associates communicated what it had learned through its confidential relation to the defendant as its attorneys to its other client, the Cincinnati Storage and Battery Company; and that thereupon, for the purpose of preventing the defendant from setting up and obtaining the benefit of its counterclaim, a pretended or sham assignment of the battery company's demand was arranged between the parties concerned, and executed to the plaintiff, who was at the time an employee of Gatewood and Associates and a party to the fraudulent scheme. It surely cannot be seriously contended that such a fraudulent assignment can in any wise affect the right of the defendant to set up any and every legal defense to which he was before entitled. [Baker v. Brown, 10 Mo. 396; Martindale v. Hudson, 25 Mo. 422.]

We find no reason, either in the statutes or the decisions, why the court should allow the plaintiff judgment for the amount of the assigned demand sued on in this action, and thus enable the assignor

to enforce collection of a demand upon which it could not have recovered judgment if it had itself brought suit thereon, and send the defendant to a foreign jurisdiction to obtain relief, in an independent action on its counterclaim, against a nonresident corporation.

We conclude that the learned trial court erred in sustaining the motion to strike out the defense pleaded in the answer.

Plaintiff makes the further point that the ruling of the court in striking out the defense set up in the answer is not before this court for review, for the reason that the ruling was not preserved in a term bill of exceptions. There is no merit in this point. The motion to strike was filed and ruled upon at the same term at which the trial was had. The motion for a new trial was filed at the same term and within four days after the verdict was rendered in the cause. The motion for a new trial was thereupon continued to a subsequent term, when it was overruled. The motion to strike and the ruling of the court thereon was preserved in the general bill of exceptions duly allowed and filed in the cause. Under these circumstances, no term bill of exceptions was required in order to preserve for review the ruling of the court on the motion to strike. It was properly preserved in the general bill.

The Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.